HELVERING, Com'r of Internal Revenue, v. EDISON BROS. STORES, Inc.

EDISON BROS. STORES, Inc., v. HELVERING, Com'r of Internal Revenue.
Nos. 12250, 12251.

Circuit Court of Appeals, Eighth Circuit.

Feb. 3, 1943.

Rehearing Denied March 3, 1943.

---

[3] See § 551, O.S.1931, 12 O.S.1941, § 977; Corbin v. Wilkinson, 175 Okl. 247, 52 P.2d 45, 47.

Peter H. Husch, of St. Louis, Mo. (J. Sydney Salkey and Salkey & Jones, all of St. Louis, Mo., on the brief), for Edison Bros. Stores, Inc.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Gerald L. Wallace, Sp. Assts. to Atty. Gen., on the brief), for Guy T. Helvering, Commissioner of Internal Revenue.

E. H. McDermott, Wm. M. Emery, and Richard· S. Oldberg, all of Chicago, Ill., amici curiae.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The questions presented on these petitions to review a decision of the United States Board of Tax Appeals are whether the taxpayer realized taxable income in either or in both of the years 1935 and 1937 from sales to its employees of shares of its capital stock, previously acquired for that purpose, and whether, where the taxpayer discharged a debt owing to its general counsel for services rendered, by transfer to him of shares of its capital stock, it was entitled to deduct as a business expense the cost of the stock to the taxpayer at the time of its acquisition, or the fair market value of the stock at the time of its transfer to the general counsel, the gain to the taxpayer in the transaction not having been reported as income. The Board of Tax Appeals held that the taxpayer realized taxable income on profits derived from the sales of its stock to employees in the year 1937 and sustained a deficiency determined by the Commissioner for that year. But it was of the opinion that profit realized by the taxpayer from sales of its stock to its employees in the year 1935 was not taxable income for that year and reversed the Commissioner's determination of a deficiency. The Board decided that the taxpayer was entitled to deduct as a business expense the market value of the shares of its stock used in discharging its debt to its general counsel as of the time of payment, reversing a contrary determination by the Commissioner. Both the taxpayer and the Commissioner have brought the decision of the Board to this Court for review.

The contentions of the parties here arise from conflicting opinions concerning the validity and interpretation of Articles 22 (a)–6 and 22(a)–16 of Treasury Regulations 86 and 94, respectively, explaining § 22(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Acts, pages 669, 825. Section 22(a) of the Revenue Act of 1934 and the corresponding provision of the Act of 1936 are identical, defining gross income as follows:

"§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or .dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The corresponding treasury regulations in dispute are identical and are as follows:

"Acquisition or disposition by a corporation of its own capital stock—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transactions, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction or indebtedness to

578

it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a reduction where permitted by the provisions of the Act."

The definition of gross income in § 22 (a) of the Revenue Acts of 1934 and 1936 has remained substantially unchanged since the passage of the Revenue Act of 1913. For more than fourteen years prior to the promulgation of the regulation quoted above, the interpretation placed by the Treasury Department upon the meaning of § 22(a) of prior revenue acts has been uniform and unchanged to the effect that a corporation realizes no taxable gain or deductible loss from the purchase and sale of its own stock. See Articles 542 and 563 of Regulations 45, and Articles 666 and 176 of Regulations 76 of the Treasury Department. Following a decision of the Treasury Department on May 2, 1934, one day before the passage by Congress of the Revenue Act of 1934, the prior interpretation of § 22(a) was abandoned in favor of the one quoted above.

The argument on behalf of the taxpayer runs as follows: The treasury regulations interpreting revenue acts prior to the Act of 1934, under which a corporation was held not to realize taxable income from the purchase and sale of its own stock, have acquired the force of law by repeated reenactments of the income tax laws by Congress without change in the definition of gross income. The regulation in question thus having acquired the force of law, the taxpayer contends, the Treasury Department is without power to change it in the absence of a change in the definition of gross income by Congress itself. In the view of the taxpayer it follows that Articles 22(a)–6 and 22(a)–16 of Treasury Regulations 86 and 94 are void. The argument is pressed further by the contention that the interpretation of § 22(a) of the Revenue Acts of 1934 and 1936, now advanced by the Treasury Department, is beyond the power of either the Department or Congress as conflicting with the meaning of the word "income" as used in the Sixteenth Amendment to the Constitution; and finally, the taxpayer contends that if valid the treasury regulations in question here are not applicable to the taxpayer's purchase and sale of its own stock in the circumstances of this case. The Commissioner contends for the reverse of these propositions. Accordingly, the taxpayer seeks reversal of the decision of the Board of Tax Appeals affirming the determination of a deficiency in its income tax for 1937, and the Commissioner, a reversal of the Board's decision reversing the determination of a deficiency against the taxpayer for the year 1935.

The facts are stipulated. Before the incorporation of the taxpayer, the incorporators entered into an agreement with underwriters whereby they subscribed to the total issue of the common stock of the corporation, agreeing, however, to resell to the corporation through the underwriters 5,000 shares of the stock for the purpose of sales by the corporation to its employees. The agreement was carried out and the taxpayer upon its organization acquired 5,000 shares of its own stock at a price of $15 per share. During the year of its incorporation the taxpayer sold a number of the shares so acquired to various employees at cost under a stock subscription plan, permitting payment by employees in installments over a period of time. During the year 1935 the taxpayer sold to employees 980 shares of its original purchase of 5,000 shares at $25 per share, although the market price of the stock at that time was $30 a share. Also in 1935 it transferred 100 shares of its stock to its general counsel in payment of a bill for $3,000 for services rendered.

In 1937 there was a reorganization of the taxpayer's capital structure, resulting in a split-up of its common stock on the basis of three new shares of par value common stock for one share of the old no par value common stock, reducing the cost of a share to the taxpayer to $5.00. In 1937 the company, pursuant to another employees' stock subscription plan, sold 3,660 shares of the new stock to its employees at a price of $15 per share. The Commissioner assessed deficiencies in income taxes against the taxpayer for the years 1935 and 1937 on the ground that the company should have included in its gross income for those years the profit of $10 per share realized by it on the sales of stock to its employees, and also on the ground that the taxpayer was not entitled to deduct the full market value of the shares which it used in 1935 to discharge its debt to its general counsel, but was limited to the cost of the shares to the taxpayer at the time of acquisition.

The principles controlling in the decision of the questions stated are established. The Treasury Department cannot, by interpretative regulations, make income of that which is not income within the meaning of the revenue acts of Congress, nor can Congress, without apportionment, tax as income that which is not income within the meaning of the Sixteenth Amendment. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; M. E. Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 83 L. Ed. 167. But Congress, in defining gross income in the various revenue acts, manifested its intention to use to its fullest extent the power granted it by the Sixteenth Amendment. Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Clifford, 309 U.S. 331, 341, 60 S.Ct. 554, 84 L.Ed. 788. What is or is not income within the meaning of the Sixteenth Amendment must be determined in each case "according to truth and substance, without regard to form." Eisner v. Macomber, supra [252 U.S. 189, 40 S.Ct. 193, 64 L.Ed. 521, 9 A.L.R. 1570]. The meaning of the word "income" in the Sixteenth Amendment and in the acts of Congress pursuant to the Amendment is that given it in common speech and every day usage. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. In the construction of the revenue acts in question here, and of the administrative regulations interpreting them, we may put aside as not controlling the meaning of income in the language of accountancy and economics. Nor can the ruling of one administrative department of the government concerning income accounting control that of another department made for an entirely different purpose under another act of Congress. Old Colony R. Co. v. Commissioner, supra.

Recent decisions of the Supreme Court of the United States and other federal courts, applying the principles stated, compel the decision here that the questioned treasury regulations pursuant to the Revenue Acts of 1934 and 1936 are valid administrative interpretations applicable to taxpayer's sales of its stock in both 1935 and 1937. It is true that in Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536, where the Court had under consideration § 22(a) of the Revenue Act of 1934 and the treasury regulation made under it which is involved here, the Court held that within the limits of permissible administrative interpretation, a department regulation interpreting an act of Congress, by repeated reenactment by Congress of the act unchanged, acquires the force of law. In that case the Court, while sustaining the power of the Treasury Department to change its interpretative regulations so as to operate prospectively, denied it the power to apply a new or amended regulation retroactively. The precise question before the Court was whether the corporate taxpayer had realized taxable income by sales of its own stock in the year 1929. The Court said that the question was governed by the treasury regulations in force in 1929, under which it was provided that a corporation realized no taxable income from sales of its own stock. It denied the power of the Treasury Department to apply to transactions completed in 1929, a regulation adopted in 1934. Here the questioned treasury regulations were made under and for the very revenue acts controlling the disputed tax liabilities, a fact which sharply distinguishes this case from the Reynolds case.

The Court in the Reynolds case expressly declined to decide whether an act of Congress was necessary to change an administrative interpretation which had acquired the force of law by repeated reenactments by Congress of the section of the act interpreted by the regulation. But in Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 101, 60 S.Ct. 18, 84 L.Ed. 101, it said that the doctrine of acquired legislative approval of an administrative regulation by reenactment unchanged of the act interpreted does not apply to preclude changes in administrative interpretations through the exercise of appropriate rulemaking powers, and in Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155, it expressly held that an act of Congress was not necessary to the amendment or change in an interpretative departmental regulation which had acquired the force of law by repeated legislative reenactment of the acts interpreted. In Morrissey v. Commissioner, 296 U.S. 344, 355, 56 S.Ct. 289, 294, 80 L.Ed. 263, the Court said that the authority of the Treasury Department to promulgate administrative constructions of revenue acts could not be deemed to be "so restricted that the regulations, once

580

issued, could not later be clarified or enlarged so as to meet administrative exigencies or conform to judicial decision."

Two recent decisions of circuit courts of appeals expressly deny the contention of the taxpayer here. Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753; Commissioner v. Air Reduction Company, 2 Cir., 130 F.2d 145, certiorari denied 63 S.Ct. 201, 87 L.Ed. ——. In the first case mentioned, the purchase of the taxpayer's own stock was made with the intention of retiring it, but later the stock was resold at a profit. In the second case, the corporation sold its own stock to certain of its officers, realizing a profit. In this case the sale was made in 1935 and the validity of the treasury regulation involved here was sustained. In the first case, the corporate taxpayer sold its own shares in the year 1937, realizing a profit on the transaction. The Court sustained the validity and the application of Article 22 (a)–16 of Treasury Regulations 94 under the Revenue Act of 1936.

We find nothing against the conclusion announced above in Morgan v. Commissioner, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585; Helvering v. Janney, 311 U.S. 189, 194, 61 S.Ct. 241, 85 L.Ed. 118, 131 A.L.R. 980; and Helvering v. Oregon Mutual Life Ins. Co., 311 U.S. 267, 270, 61 S.Ct. 207, 85 L.Ed. 180. The holding of these cases is not, as the taxpayer claims, that an administrative regulation which through repeated reenactment by Congress of the act to which it applies has acquired the force of law, can only be amended by an act of Congress. On the contrary, each of these cases sustains the proposition that the act of Congress alone fixes rights which a governmental department, by administrative regulation, cannot take away nor destroy.

Moreover, the earlier federal cases involving earlier and different regulations, relied on by the taxpayer, must give way to the later decisions based on later regulations. Nor does it appear that the treasury regulation providing that a corporation realized neither gain nor loss from the purchase and sale of its own stock has received at the hands of the courts the uniform approval which the taxpayer claims for it. It has been held that the apparent weight of authority in income tax cases arising under the earlier reve-

nue acts and the corresponding treasury regulations took the view that the regulation denying deductible loss or taxable gain to a corporate taxpayer on sales of its own stock was intended to "apply only to original issues or to purchases and sales which were in fact capital transactions." Investment Corp. of Philadelphia v. United States, D.C., 43 F.Supp. 64, 65; Commissioner v. S. A. Woods Co., 1 Cir., 57 P.2d 635; Commissioner v. Boca Ceiga Development Corp., 3 Cir., 66 F.2d 1004. And see First Chrold Corp. v. Commissioner, 3 Cir., 97 F.2d 22, reversed 306 U.S. 117, 59 S.Ct. 427, 82 L.Ed. 542, under authority of Helvering v. R. J. Reynolds Tobacco Co., supra.

In E. R. Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69, 70, 71, upon the reasoning of which the taxpayer places great reliance here, although distinguished if not overruled by the same Court's decision in Commissioner v. Air Reduction Co., supra, the Court decided under the reenactment doctrine that the prior regulation involved had acquired the force of law and had become so firmly embedded in the revenue acts that it could only be dislodged by an act of Congress. But the Court was careful to point out that it did not hold that the regulation then in force was on its face invalid or was not a justifiable interpretation of § 22(a) of the Revenue Act of 1932. It said: "We need not say that no other interpretation could have been made: it is not uncommon, when a corporation buys its own shares, to regard them as stock existing in a kind of limbo, so that when it sells them again, it does not reissue them de novo, but sells its own property. That convention may be sufficient constitutional basis for a statute which should tax as income the difference between the amount paid to buy in 'treasury shares' and that received on their sale; we do not mean to suggest the opposite, for in such matters convention may be conclusive."

The Board was right in affirming the determination by the Commissioner of a deficiency in the taxpayer's income for the year 1937, and wrong in reversing his determination of a deficiency resulting from stock sales for the year 1935. With respect to stock sales in the year 1935, the Board thought it could not presume that Congress, in the passage of the Revenue Act of 1934, had knowledge of the Treasury's change in its interpretation of prior

revenue acts, promulgated by the Treasury's decision one day before the passage of the Act of 1934. It thought that the doctrine of congressional approval by reenactment could not be applied in the circumstances stated. But we need not speculate upon whether Congress, in the passage of the Revenue Act of 1934, had knowledge of the amendment of the pertinent administrative interpretation promulgated by a treasury decision on the day before the passage of the Act, since congressional approval, under controlling decisions, was not necessary to a change in administrative interpretation. In Helvering v. R. J. Reynolds Tobacco Co., supra, the Court held that the language of § 22(a) of the Revenue Act of 1934 defining gross income, substantially the same as the corresponding section of prior revenue acts, was so general in its terms as to justify an administrative interpretation of its meaning. Since the Act itself, and not the interpretation, is the ultimate source of the rights and liabilities of the taxpayers, the Treasury Department was not precluded from correcting what it determined was error in its prior regulation and in applying its new interpretation prospectively, as is done here, in the case of taxpayer's income for the year 1935, as well as for the year 1937.

As the Board of Tax Appeals indicated in its opinion, congressional approval of the Treasury's interpretative regulation may be implied in the case of taxpayer's income for the year 1937, the interpretation having been made two years before the passage by Congress of the controlling Revenue Act of 1936. But the question is not whether the administrative regulations have received legislative approval, but whether they are permissible interpretations of the respective revenue acts to which they apply. In the light of controlling authority, the question must be answered in the affirmative.

 With respect to the taxpayer's transfer of shares of its capital stock to its general counsel, the Board was of the opinion that the transaction was effective for income tax purposes as a sale of the shares involved. The question before the Board, therefore, was whether, where the taxpayer satisfied a debt owing to its general counsel for services rendered by the transfer to counsel of shares of its capital stock, it realized taxable income, the taxpayer having acquired the stock in question at a cost less than the price at which it was transferred. But it thought the gain to the taxpayer in the transaction was not taxable income because of its opinion of the invalidity of Article 22(a)-6 of Treasury Regulations 86, as applied to sales of corporate stock in the year 1935. Since we have reached the opposite conclusion, it follows that this decision of the Board must be reversed and the determination of a deficiency in taxpayer's income for the year 1935 resulting from the transaction under consideration must be sustained.

 The taxpayer also contends that if the validity of the treasury regulations involved here should be sustained, nevertheless, the regulations have no application under the evidence in this case. The regulations in question provide in brief that whether a corporation realizes gain or loss in the purchase and sale of its own capital stock depends upon the real nature of the transaction, to be ascertained from all facts and circumstances; and that if a corporation deals in its own shares, as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. The argument of the taxpayer is that the sale of its own stock to its employees, under a plan adopted by the corporation for the purpose of creating and sustaining employee interest in the affairs of the corporation, is not dealing in its own stock by the corporation as it might deal in the shares of another corporation. The point is made that the purchase and sale of the shares in another corporation could not satisfy the essential purpose of the employee purchase plan. This, of course, is true but immaterial. The material fact is that the corporation bought and sold its own stock at a profit, dealing, in controlling aspects of the transaction, as it might have dealt with the stock of another corporation. The fact that these profitable sales were made to employees is not alone determinative of the character of the transaction viewed as a whole. We think the transaction clearly within the department's regulations.

On the petition of the Commissioner in No. 12,250, the decision of the Board of Tax Appeals is reversed. Upon the petition of the taxpayer for review in No 12,251, the decision of the Board of Tax Appeals is affirmed.