UNITED STATES of America,
Appellant,

v.

MISSISSIPPI CHEMICAL COMPANY,
Appellee.

No. 19418.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1964.

Melva M. Graney, Atty., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., Edwin R. Holmes, Jr., Asst. U. S. Atty., of counsel, for appellant.

John C. Satterfield, Satterfield, Shell, Williams & Buford, Yazoo City, Miss., Harry C. Griffith, Hollaman M. Raney, Yazoo City, Miss., of counsel, for appellee.

Before HUTCHESON and GEWIN, Circuit Judges, and HOOPER, District Judge.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment for the taxpayer entered in the United States District Court for the Southern District of Mississippi. The nature, background, and right of the controversy are set out in the district court's findings and conclusions, reported in 197 F.Supp. 490.

The claims and pretensions of both parties, as set out in their briefs, are prolix and detailed, and both briefs seem designed to make the issues seem greatly involved and highly difficult of solution.

The basic contention of the appellant, which was decided against it in the district court, is that the sole method of computation of the patronage dividends claimed in this case is that prescribed in the formulas laid down in Bureau rulings, decisions, and memorandums, and that no other method may be used.

On the other hand, the appellee insists: that these rulings, etc., have no legal force because not prescribed or supported by any statute so providing; that the undisputed facts stipulated and proved in the case fully support the district judge's decision; and that, though no specific statute prescribing a formula for use in this case exists, there is ample legislative and judicial support for the findings and conclusions, and the judgment in taxpayer's favor.

We agree that this is so, and, so agreeing, we affirm the judgment.

The basic principles of law governing the taxation of non-exempt cooperatives may be thus summarized:

■ When a legally enforceable obligation exists to refund to qualified pur-

chasers (stockholder-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, such receipts are income of the patron and not income of the cooperative and consequently are to be excluded in the computation of the cooperative's gross income. San Joaquin Valley Poultry Producers' Ass'n. v. Commissioner, 9 Cir., 136 F.2d 382; Producers Gin, Inc. v. Commissioner, 18 T.C.M. 369; Southwest Hardware Co. v. Commissioner, 24 T.C. 75; Otsego County Cooperative Association v. Commissioner, 11 T.C.M. 818; Colony Farms Cooperative Dairy, Inc. v. Commissioner, 17 T.C. 688.

This exclusion is enforced by the courts on the grounds that (1) under the pre-existing legal obligation the margins never become the property of the cooperative and are not a part of its income, (2) money received by one in a business transaction which he has no right to retain but must account for to another cannot be said to be a gain or profit to him, (3) patronage refunds are distributions of money belonging to the patrons rather than distribution of income of the cooperative, (4) while held by the cooperative the funds are in its hands as agent or trustee for its patrons to whom it is legally obligated to repay the same, and (5) patronage refunds are in reality discounts or rebates paid under a pre-existing legal obligation and are just as allowable as any other discount upon the purchase price of any commodity. Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752; Saenger v. Commissioner, 5th Cir., 69 F.2d 633; Uniform Printing & Supply Co. v. Commissioner, 7 Cir., 88 F.2d 75; Farmers Cooperative Co. v. Birmingham, N.D. Iowa, 86 F.Supp. 201; State of Mississippi v. Morgan Gin Co., 186 Miss. 66, 189 So. 817.

■ It is immaterial whether the cooperative is organized under a special cooperative statute or under the general corporation law, the test is the existence of a legally enforceable obligation to pay patronage refunds which existed during the period when such refunds were earned. The obligation may be created by the charter and by-laws or by a separate contract. Uniform Printing & Supply Co. v. Commissioner, supra; United Cooperatives, Inc., 4 T.C. 93.

■ If the board of directors of such a non-exempt cooperative has the discretion under the contract to utilize a limited portion of such margins for the payment of common stock dividends or other purposes, the amount which may be thus diverted within the fixed limits will not be excluded. It is held that the legally enforceable obligation to pay patronage refunds is destroyed to the extent that discretion to divert exists. United Cooperatives, Inc., 4 T.C. 93, supra.

■ Such non-exempt cooperative is required to pay regular corporate income taxes upon net margins or profits derived from sales to non-member patrons when such persons are not entitled to patronage refunds upon their purchases. Pomeroy Cooperative Grain Co. v. Commissioner, 31 T.C. 674.

■ Within this broad picture of the legal principles involved in the taxation of non-exempt cooperatives lies the question of what portion of the funds handled by a cooperative is actually its income taxable to it, and what portion is actually income to the member-patrons taxable to them. As is stated in Helvering v. Edison Brothers Stores, 8 Cir., 133 F.2d 575: "The Treasury Department cannot, by interpretative regulations, make income of that which is not income within the meaning of the revenue acts of Congress." Compare the statement of the Supreme Court in Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 69, 83 L.Ed. 366: "Treasury Regulations can add nothing to income as defined by Congress". Treasury Regulations and Treasury Decisions, however, are not involved in the issue for decision here. The taxpayer's position is that the Commissioner cannot, by solicitor's memoranda, departmental committee recommendations, or rulings, or by his own private rulings in this case make taxable income to the co-

operative of that which is taxable income to the patron. The entire amount here involved was paid to the patrons in cash in accordance with a legally enforceable obligation and tax has been paid by the patrons upon the income thus received.

The Court of Appeals of the Ninth Circuit in San Joaquin Valley Poultry Producers' Ass'n v. Commissioner, 136 F.2d 382, was considering margins on patronage business which had been placed by the petitioner cooperative in reserves and held for the benefit of the patrons. In defining the nature thereof the Court said:

"The sums so placed in these reserves * * * never became the property of petitioner, but were and are property of the members (cit.) * * *. The fact that the sums were not payable to the members on demand, or at any fixed time, does not alter the fact that they were their property and not petitioner's. Petitioner held them, not as owner, but as agent or trustee for the members (cit.). Since none of the sums ever belonged to petitioner, they could not be, they were not, income of petitioner."

In its brief the appellant states that, "We are concerned solely with the effect of the provisions of the charter from a federal income tax standpoint and, accordingly, the federal income tax laws are controlling". We are in complete accord with this statement. It was the tax effect of the charter of the San Joaquin Valley Poultry Producers' Association which was determined in the above case.

The tax effects of charter-contracts have been considered repeatedly by the Tax Court. Such a provision was before the Tax Court in Colony Farms Cooperative Dairy, Inc. v. Commissioner, 17 T.C. 688, in which the court held:

"This problem is not new, and has often been before the courts. The accepted rule is that if the cooperative receives these earnings under an existing legal obligation to distribute them to its members, such

earnings are not income of the cooperative and consequently are to be excluded in the computation of its gross income."

A recent case decided by the Tax Court, in determining for tax purposes what was income to the cooperative, is Producers Gin, Inc. v. Commissioner, 18 T.C.M., 369. There the court held as follows:

"So construed, the agreement would meet the requirements for a non-taxable cooperative to the extent of member sales of cottonseed. Pomeroy Cooperative Grain Co., 31 T.C. 684. There was a pre-existing legal obligation; the members' cotton never became the property of the cooperative; and no non-member business accrued to the advantage of the members. And that the corporation was not organized as a cooperative is not fatal. Eugene Fruit Growers Association, supra; United Cooperatives, Inc., 4 T.C. 93. The profits in question never belonged to petitioner and did not become a part of its income. Clover Farm Stores Corporation, 17 T.C. 1265."

Compare the thorough and exhaustive opinion in Farmers Cooperative Co. v. Birmingham, N.D.Iowa, 86 F.Supp. 201. There, in determining the status for tax purposes of funds contracted to be paid as patronage dividends, the court said:

"In the case of Saenger v. Commissioner, 5 Cir., 1934, 69 F.2d [613], 631, 633 the United States Court of Appeals for the Fifth Circuit stated, ' * * * if compensation paid to one is paid to him as the agent or servant in fact, not in fiction, of another, that income is taxable, not to the servant or agent as earner, but to its real earner, the principal. (Cit.).' The Court cites in support of that statement cases dealing with community property or family partnership relations. The Mississippi Supreme Court in State v. Morgan Gin Co., 1939, 186 Miss. 66, 189 So. 817, used the theory advanced in the Saenger case to uphold.

a cooperative's exclusion of patronage dividends from its income subject to state income tax. Though no patronage dividends were involved, the United States Supreme Court in Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, stated that in order for receipts to constitute taxable income to a taxpayer there must be (1) the presence of a claim or right to such receipts, and (2) the absence of a definite, unconditional obligation to pay the same to another. * * *"

The exclusion of patronage dividends for federal income tax purposes has not been placed upon the ground that cooperatives are special creatures of statute under the tax laws, but rather upon the theory that patronage dividends are in reality rebates on purchases or deferred payments on sales allocated or distributed pursuant to a pre-existing obligation of the cooperative, and thus do not constitute taxable income to the cooperative. Midland Cooperative Wholesale Oil Ass'n. v. Commissioner, 44 B.T.A. 824.

The appellant, in its brief, admits that "the long established practice" of the commissioner conforms to these court decisions and recognizes that "true patronage dividends" never become a part of the gross income of a cooperative, quoting from the Tax Court in Farmers Cooperative Co. v. Commissioner, decided 2-19-63 (P-H T.C. Memorandum Decisions, par. 63,043). The brief then declares:

"The rationale for the exclusion of patronage dividends from the gross income of a cooperative, i. e., that the patronage dividend is a rebate resulting in a price adjustment on the stockholder-patron's business with the cooperative and thus was never income of the cooperative, circumscribes the meaning of a patronage dividend and imposes certain requirements."

■ We are in complete accord with the statement of appellant that "If a patronage refund to stockholders is made out of profits from non-stockholder business, the refund is merely a distribution of income which is taxable to the corporation instead of being a rebate of a part of the price paid by the stockholder-patrons to the corporation." The record demonstrates, and the district judge concluded, that the cooperative actually paid the patronage refunds here from earnings on business done with the stockholder patrons.

The record demonstrates, and the district court found, that the Mississippi Chemical Corporation and its patrons and its stockholders or members "really meant to, and did, conduct business" in accordance with the provision of its charter. They not only "really meant" to do so, they have done so and have paid and received, respectively, the sum of $680,-825.06, as a result of doing business in accordance with the provisions of the charter in question.

■ As distinguished from the appellant's position, the law governing what are patronage dividends, patronage rebates or patronage refunds excludable from income of the cooperative, i. e., true patronage dividends is not in dispute. The patronage refunds agreed to be paid and paid here meet the three recognized tests which determined whether payments to member-patrons by a cooperative are excludable patronage dividends. These tests are clearly stated by the Court of Appeals for the Eighth Circuit in Pomeroy Cooperative Grain Co. v. Commissioner, 288 F.2d 326, quoting the Tax Court in the same case reported in 31 T.C. 686, as follows:

"'1: The allocation must have been made pursuant to a legal obligation which existed at the time the patron transacted his business with the cooperative.

"'2. The allocation must have been made out of profits or income realized from transactions with the particular patrons for whose benefit the allocations were made, and not out of profits or income realized from transactions with other persons or organizations which were not en-

titled to participate in such allocations.'. * * *

"3. The allocations must have been made equitably; so that profits realized on the one hand from selling merchandise or services to patrons, and those realized on the other hand from marketing products purchased from patrons, were allocated ratably to the particular patrons whose patronage created each particular type of profit."

The taxpayer here has complied with the test laid down in Southwest Hardware Co. v. Commissioner, 24 T.C. 75:

"It is held that petitioner was under a legal and contractual obligation at the time members made purchases in the taxable years to make refunds of their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, and that, accordingly, petitioner is entitled to exclude from its taxable income for each taxable year  the amounts of such shares of earnings as were credited to its members and distributed to them by means of the 2 per cent notes called 'receipts'."

The District Court in the instant case was particularly correct in the following finding:

"That the said total sum of $680,-825.06 thus paid to its stockholder-patrons constituted 'true patronage dividends' (1) having been paid pursuant to a pre-existing legal obligation, (2) having been allocated out of margins or profits realized from the transactions with the patrons for whose benefit the allocations were made and (3) having been allocated ratably and equitably between the stockholder-patrons who purchased the different types of fertilizer manufactured by the corporation. That no part of said sum was paid from the profits on non-stockholder business.  Pomeroy Cooperative Grain Co. v. Commissioner, 31 T.C.

674 and Southwestern Hardware Co. v. Commissioner, 24 T.C. 75."

In short, the appellant does not have the legal right, as it tries to do here, by use of A.R.R. 6967 or S.M. 1551, or otherwise, to transform income of the patrons into income taxable to the cooperative.  The cases it cited are not applicable.

The appellant has quoted or cited thirteen departmental memoranda, rulings and recommendations in an attempt to establish "long continued administrative practice" concerning the exclusion of "true patronage dividends".  When numerous courts have referred to their recognition of long continued administrative practice concerning patronage dividends, they do not adjudicate that this practice is the only source, or real basis, of the exclusion from gross income of a cooperative of patronage rebates.  The administrative practices must conform to the law, they do not make the law.

The case of Valparaiso Grain & Lumber Co. v. Commissioner, 44 B.T.A. 125 involved a charter similar to this one. In the written stipulation of facts quoted in the opinion, paragraph seven is as follows:

"7.  In October, 1936, petitioner declared and paid to its stockholders, on its outstanding capital stock, of $20,000, cash dividends of $1200.00. The by-laws of petitioner provide for the payment of fixed dividends on its capital stock before any distribution of patronage rebates can be made."

The exclusion sought and allowed here is not based upon legislative grace or administrative practice.  It arises from the governing principles of law announced by the Courts and restated here.

The foundation of appellant's case is the assertion that the "administrative practice * * * provides the only authority for the exclusion of patronage dividends from gross income" and that "There is no authority or basis for the exclusion of patronage dividends from a cooperative's gross income other than that reflected in administrative practice."

As a matter of fact and law, administrative practice has no effect upon the determination of what constitutes gross income, except insofar as the practice is in accord with the rules of law governing that determination.

Of the clear view that the district court was right, we affirm its judgment.

Affirmed.