**Office of the Attorney General**
**State of Texas**



DAN MORALES
ATTORNEY GENERAL

June 15, 1998

The Honorable Alberto R. Gonzales
Secretary of State
Office of the Secretary of State
P.O. Box 12697
Austin, Texas 78711-2697

Opinion No. DM-479

Re: Whether a corporation that intends to operate as a cooperative may incorporate under the Texas Non-Profit Act or must the corporation incorporate under the Cooperative Association Act (RQ-966)

Dear Mr. Gonzales:

Your predecessor requested an opinion about the incorporation of a cooperative corporation under the Texas Non-Profit Corporation Act, Texas Civil Statutes articles 1396-1.01 through 1396-11.01 (the "nonprofit act"). Your predecessor explained that your office has received articles of incorporation for a proposed corporation to be named Poka Lambro Communication Cooperative, Inc. ("Poka"). Poka's stated purpose is

> on behalf of its patrons, to engage in the cooperative purchase, primarily by contract with third parties, of various utility and utility-related services which may include, but are not limited to, voice and data transmission communications, security and monitoring services, cable television and electric services, and for all lawful business for which cooperative non-profit corporations may be organized under Texas law.

ARTS. OF INC. OF POKA LAMBRO COMMUNICATIONS COOP., INC., art. IV (Purpose) (Mar. 11, 1997). Poka's patrons are its members. *Id.* art. VII. The members do not vote. *Id.* Article III of the articles of incorporation states that Poka is organized as a nonprofit cooperative corporation pursuant to the nonprofit act, but article IX provides that Poka

> shall operate on a *cooperative basis* as that term is defined in the Texas Cooperative Act, Article 1396-50.01, Tex. Rev. Civ. Stat. The net savings after payment of operating expenses and reasonable reserves for capital, as determined by the directors of the Corporation, shall be allocated and/or distributed to its patrons in proportion to their patronage or retained by the enterprise for the actual or potential expansion of its services, the reduction of charges to the patrons, or for other purposes consistent with the best interest of the Corporation as determined by its Board of Directors. [Emphasis added].

"Cooperative basis" is a term of art specifically defined in the Cooperative Association Act (the "cooperative act"). *See* V.T.C.S. art. 1396-50.01, § 2(5).

Your predecessor asked if "a corporation, which intends to operate as a cooperative [may] incorporate under the [non-profit act] when there is no specific statute providing for incorporation for that specific cooperative purpose, or must the corporation be incorporated under the [cooperative act ]." In our opinion, such a corporation must incorporate under the cooperative act.[1]

Before we consider the relevant provisions of the nonprofit act and the cooperative act, we believe it would be helpful to provide a brief overview of a "cooperative" corporation or association and its distinctive features. A "cooperative" is a corporation or association organized for the purpose of providing economic services, without gain to itself, to shareholders or members who own and control it. *United Grocers, Ltd. v. United States*, 186 F. Supp. 724, 733 (N.C. Ca. 1960), *aff'd*, 308 F. 2d 634 (9th Cir. 1962). The defining characteristic of a cooperative is its obligation to distribute net proceeds,[2] the revenues derived from its business operations minus operating expenses, to its members. Roswell Magill & Allen H. Merrill, *The Taxable Income of Cooperatives*, 49 MICH. L.REV. 169, 173-74 (1950). The net proceeds are generally distributed to the members in the form of patronage refunds[3] or dividends in amounts determined by the use made by the members of the association facilities. 18 AM. JUR. 2D *Cooperative Associations* § 22 (1985). Cooperatives in general are distinguishable from other business structures by the features of democratic control and voting; distribution of economic benefits on an equal basis or proportionate to the use made of association facilities; limited return on capital; and of transaction of business with their own members. *Id.* § 2. Finally, cooperatives may be either not-for-profit or for-profit corporations. *See* 1 CHARLES R. P. KEATING & G. O'GRADNEY, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 68.10 (1990).[4] "Nonprofit" as applied to a cooperative corporation means that it is not organized primarily to pay dividends on invested capital. *See Greene County Rural Elec. Coop. v. Nelson*, 12 N.W.2d 886, 888 (Iowa 1944).

---

[1]Given our conclusion, we do not address the other questions.

[2]The net proceeds derived by cooperatives from business operations are described at various times as "net income," "net earnings," "net profits," "net margins," "net proceeds," "net savings," or "net over-deposits." Magill & Merrill, *supra* n. 17, at 173.

[3]*See infra* note 14.

[4]*See also United Grocers, Ltd.*, 186 F. Supp. at 733 (rule that patronage refunds do not constitute income to cooperative not based on ground that cooperative is nonprofit); 18 AM. JUR. 2D *Cooperatives* § 1 (1985) (Business cooperatives formed for the purpose of aiding their members and, thus, are not charitable organizations since their motive is profit).

With the above overview of the nature of cooperatives, we consider now the relevant provisions of the nonprofit act adopted by the legislature in 1959.[5] The statute provides that "[e]xcept as hereinafter in this Article expressly excluded herefrom, non-profit corporations may be organized under this Act for any lawful purpose or purposes . . . ."[6] V.T.C.S. art. 1396-2.01(A). The phrase "nonprofit corporation" is defined as "the equivalent of 'not for profit corporation' and means a corporation no part of the income of which is distributable to its members, directors, or officers." *Id.* art. 1396-1.02(3). Article 1396-2.24(A) additionally provides that "[n]o dividend shall be paid and no part of the income of a corporation shall be distributed to its members, directors, or officers." The statute does not define "income of a corporation," nor have we found any Texas cases construing this phrase.

Since 1959, the nonprofit act has expressly excluded from its application[7] cooperatives organized for particular purposes, *i.e.*, "Co-operative Credit Associations, Farmers' Co-operative Societies, Co-operative Marketing Act Corporations, Rural Electric Co-operative Corporations, [and] Telephone Co-operative Corporations . . . ." *Id.* art. 1396-2.01(B)(3). Each one of the excluded cooperatives is provided for and may be incorporated under a specific statute.[8] Poka is not one of the excluded cooperatives.[9] The act does not expressly prohibit incorporation of other nonprofit cooperatives, and in an opinion issued in 1960, before the legislature enacted the cooperative act, this office refused to construe the exclusionary language discussed above to exclude all cooperatives from the purview of the act. *See* Attorney General Opinion WW-849 (1960) at 2. In Attorney General Opinion WW-849, this office determined that the secretary of state was not prohibited from accepting and filing under the nonprofit act articles of incorporation of a nonprofit corporation

---

[5]*See* Act of April 27, 1959, 56th Leg., R.S., ch. 162, 1959 Tex. Gen. Laws 286, 286.

[6]Your predecessor did not indicate, and we have no reason to believe, that any of the purposes for which Poka proposes to organize are unlawful. *See also* V.T.C.S. art. 1396-2.01(B)(1) (act does not apply if one or more purposes expressly forbidden in this state). We also assume for the purposes of this opinion that Poka will not engage in an activity requiring a license that cannot be granted to a corporation. *See id.* art. 1396-2.01(B)(2) (act does not apply if any of corporate purposes to engage in activity that cannot be engaged in without obtaining license and such license cannot be lawfully granted to corporation).

[7]*See supra* note 5.

[8]*See* V.T.C.S. arts. 1528b (Electric Cooperative Corporation Act), 1528c (Telephone Cooperative Act); Agric. Code chs. 51 (Farmer's Cooperative Societies), 55 (Cooperative Credit Associations); *see also* Attorney General Opinion WW-849 (1960) at 1-2 (named cooperatives no doubt excluded because incorporated pursuant to specific and special statutes).

[9]Poka is described to us as a consumer cooperative which will purchase utility related services on behalf of its members. Clearly it is not a Co-operative Credit Association, or a Farmers' Co-operative Society. It is not a Co-operative Marketing Act Corporation, which is operated for the benefit of agricultural producers; a Rural Electric Co-operative engaged in furnishing electricity in rural areas; or a Telephone Co-operative also engaged in furnishing communication services.

merely because its stated corporate purpose was to acquire and operate an apartment building to be used by its members on a cooperative basis.[10] *Id.* at 4.

In 1975, subsequent to the issuance of Attorney General Opinion WW-849, the legislature enacted the cooperative act.[11] The cooperative act authorizes incorporation of any association[12] "to engage in acquiring, producing, building, operating, manufacturing, furnishing, exchanging, or distributing any type of property, commodities, goods, or services for the primary and mutual benefit of the members of the association." V.T.C.S. art. 1396-50.01, § 5. The statute does not apply to associations or corporations organized to provide or related to health or medical care, or organized under the Cooperative Marketing Act, Agriculture Code chapter 52. *Id.* §§ 4, 45.

Only an association incorporated under the cooperative act, a group organized on a cooperative basis under any other state law, or a foreign corporation organized on a cooperative basis and authorized to do business in this state, may use the term "cooperative" as part of its name, or represent itself as conducting business on a cooperative basis. *Id.* § 39(a).[13] "Cooperative basis" is defined as follows:

> 'Cooperative basis' means that the net savings after payment, if any, of *investment dividends* and after making provisions for separate funds required or specifically permitted by statute, articles, or by-laws *is allocated or distributed to member patrons, or to all patrons*, in proportion to their patronage or retained by the enterprise for the actual or potential expansion of its services, the reduction of its charges to the patrons, or for other purposes not inconsistent with its non-profit character.

---

[10]The attorney general's conclusion was based, first, on the rationale that the cooperatives excluded from the act's application were those incorporated pursuant to other specific statutes, and were so excluded precisely because there were specific statutes dealing with that particular type of cooperative. Attorney General Opinion WW-849 (1960) at 1-2. Since no specific statute dealt with an apartment cooperative, the exclusionary language would not be construed to exclude incorporation of an apartment cooperative. *Id.* Secondly, that the nonprofit act generally excludes from its purview enterprises that seek to return or distribute to members, directors, or officers, any portion of the net revenues above and beyond actual costs of operation. *Id.* at 3. The attorney general reasoned that although some cooperatives may and do distribute a portion of their income to members, in which case they would be excluded from the purview of the act, some do not. *Id.* The corporation in question, the attorney general stated, may well be in the latter category, and, therefore, may incorporate under the act. *Id.*

[11]*See* Act of May 24, 1975, 64th Leg., R.S., ch. 318, 1975 Tex. Gen. Laws 814, 814.

[12]"Association" means "a group enterprise legally incorporated under this Act." V.T.C.S. art. 1396-50.01 § 2(1).

[13]*But see* House Judiciary Comm., Bill Analysis, H.B. 643, 64th Leg., R.S. (1975) (section 39 restricts use of name "cooperative" to associations organized under cooperative act).

V.T.C.S. art. 1396-50.01 § 2(5) (emphasis added). "Net savings" means "the total income of an association less the costs of operation." *Id.* § 2(3). The net savings must be apportioned in the order and distributed in the manner set forth in section 34. Groups operating on a cooperative basis on the effective date of the statute may elect to secure the benefits of and be governed by the statute. *Id.* § 42. The cooperative act does not expressly require that all eligible cooperatives incorporate thereunder.

No court has addressed the question of whether a cooperative not specifically provided for by a different statute must incorporate under the cooperative act rather than the nonprofit act. The following principles of statutory construction guide our resolution of this question of first impression:

> Our ultimate purpose must be to effect the Legislature's intent. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). We resort to rules of construction only when the statute in question is ambiguous. *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex. 1974). When the meaning of an existing law is uncertain, the Legislature's later interpretation of it is highly persuasive. *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 274 (1944). In addition, the construction of a statute by an agency charged with its execution is entitled to serious consideration unless the agency's construction is clearly inconsistent with the Legislature's intent. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see also* Tex. Gov't Code § 311.023(6).

*Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996). Application of these rules leads us to conclude that the legislature intended cooperatives to incorporate only under the cooperative act.

First, we apply these rules to reexamine the nonprofit act. Although the nonprofit act does not prohibit incorporation of cooperatives generally, it does not provide for such incorporation, nor does it otherwise provide for cooperatives. No provision is made for operation on a "cooperative basis," as described above, *i.e.*, the equal or proportionate distribution of income or dividend to members after payment of actual operation expenses. In fact, on its face, the statute would appear to exclude corporations that intend or do operate on a cooperative basis, given its definition of a "nonprofit corporation" as a "a corporation *no part of the income of which is distributable to the members, directors, or officers.*" *See* V.T.C.S. art. 1396-1.02(3) (defining "non-profit corporation"); *see also* arts. 1396-2.24(A) (prohibiting dividends and distribution of corporation's income), 1396-50.01, § 2(5) (definition of "cooperative basis"). This is not fully dispositive, however, since the nonprofit act does not define "income of a corporation" and, arguably, income derived by a cooperative from its business operations does not constitute income to the cooperative.[14]

---

[14]For purposes of federal tax law, net proceeds derived by a cooperative and paid to its members do not
(continued...)

Although this office in Attorney General Opinion WW-849 did conclude that an apartment cooperative may be formed under the nonprofit act, that opinion was issued prior to the adoption of the cooperative act. Indeed, the conclusion in that opinion is premised partly on the fact that there were no statutes providing for the incorporation of an apartment cooperative. *See* Attorney General Opinion WW-849 (1960) at 2. The conclusion was also premised on the assumption that the cooperative in question did not contemplate distribution of dividends or income to its members or directors, prohibited by the nonprofit act. *Id.* at 3. The opinion clearly acknowledges that some cooperatives do in fact distribute income and that those cooperatives would not be within the purview of the nonprofit act. *Id.*

That the legislature did not view the nonprofit act as providing for cooperatives is evidenced by the legislative history of the cooperative act. *See Brushy Creek M.U.D.*, 917 S.W.2d at 21 (when meaning of existing law uncertain, legislature's later interpretation of it highly persuasive). The House Judiciary Committee bill analysis for the cooperative act gives the following explanation for its adoption:

> Under present statutes there are no provisions relating to the incorporation, regulation, and organization of cooperative associations. Due to the increasing number of cooperative associations being created, it is felt that legislation is needed to protect those people who might become members of such organizations.

---

[14](...continued)
constitute taxable income to the cooperative. As discussed above, net proceeds are generally distributed to cooperative members in the form of patronage refunds or dividends. *See* 18 AM. JUR. 2D *Cooperative Associations* § 22 (1985). Pursuant to judicial determinations, payments made by members to a cooperative under an arrangement by which the cooperative is obligated to return to the member, as patronage refunds, any savings over and above operating expenses, constitute income to the member and not to the cooperative for federal income tax purposes. *United States v. Mississippi Chem. Co.*, 326 F.2d 569, 571 (5th Cir. 1964); *United Grocers, Ltd.*, 186 F.Supp. at 733; *see also Allied Supermarkets, Inc. v. Grocer's Dairy Co.*, 206 N.W.2d 490, 492 (Mich. App. 1973) (refunds differ from dividends because former are not distribution of income). This judicial rule is not based on the reasoning that the cooperative is a nonprofit but on the reasoning that patronage refunds, if required to be returned to the member, are in effect discounts or rebates to members or returns of overcharges and, thus, not income to the cooperative. *United Grocers, Ltd.*, 186 F. Supp. at 733; *see also Mississippi Chem. Co.*, 326 F.2d at 571 (listing grounds on which courts have enforced this rule). Consistent with this theory, however, if a cooperative's board of directors retains the discretion to use any portion of the net proceeds to pay common stock dividends or for other purposes, that portion is taxable income to the cooperative. *Id.* Additionally, amounts derived by a cooperative from sales to non-member patrons who are not entitled to patronage refunds on their purchases are also taxable income. *Id.*

One court has speculated, in connection with resolving the separate question of what income is taxable to a cooperative, that "[i]t is quite probable that income of a cooperative, which is so organized as to be in the relation of agent or trustee to its members, would not be considered income to the cooperative but, rather, the income of the principals or beneficiaries—the members." *United Grocers*, 186 F. Supp. at 733; *see also Linnton Plywood Ass'n v. State Tax Comm'n*, 403 P.2d 708, 712 (Ore. 1965) (Denecke, J., dissenting) (cooperatives have been considered merely conduits for passage of income through to members, or agents for their principals, the members).

*House Judiciary Comm., Bill Analysis, H.B. 643, 64th Leg., R.S. (1975). The House Study Group,* the predecessor to the House Research Organization, makes the following comment with respect to cooperatives and the nonprofit act:

> No current law offers a satisfactory vehicle through which consumer cooperatives may incorporate -- (and thereby gain the tax benefits, limited liability, regulation by the State and other benefits [of] incorporation). The Texas Non-Profit Corporation Act does not provide for distribution of dividends to members; the Cooperative Marketing Act only applies to <u>producers</u>' cooperatives.

House Study Group, Judiciary Comm. Cooperative Association Act, H.B. 643, 64th Leg., R.S. (1975) (emphasis in original).

We next apply the rules of statutory construction set out above to analyze the cooperative act. The legislature, by adopting the cooperative act, intended to address the gap in the law regarding cooperatives, and to provide a comprehensive statutory framework for the incorporation, organization, and regulation of cooperative associations. *See* Act of May 24, 1975, 64th Leg., R.S., ch. 318, 1975 Tex. Gen. Laws 814, 814 (caption) ("An Act relating to the incorporation, organization, and regulation of cooperative associations; providing penalties; and declaring an emergency."); Judiciary Comm. Cooperative Association Act, H.B. 643, 64th Leg., R.S. (1975) ("The purpose of H.B. 643 is to provide statutes relating to incorporation, organization, and regulation of cooperative associations."); House Study Group, Judiciary Comm. Cooperative Association Act, H.B. 643, 64th Leg., R.S. (1975) ("This bill provides an entire statutory scheme for the incorporation, regulation, and organization of cooperative associations. . . . The bill permits cooperatives to incorporate to engage in practically any kind of enterprise for the 'mutual benefit of the members of the association.'").

Moreover, as the House Judiciary Committee's statements indicate, the legislature intended by enacting the cooperative act to protect those persons who might become members of a cooperative. Thus, the cooperative act provides that each individual member has one vote unless the member is another association or cooperative group in which case the voting rights of the member association may be as prescribed in the articles of incorporation or bylaws. V.T.C.S. art. 1396-50.01, § 16(a). No voting agreement or other device to evade the one-member-one-vote rule is enforceable. *Id.* § 16(b). Furthermore, the association must be managed by a board of directors elected by and from members of the association. *Id.* § 21(a). With certain exceptions, net savings must be apportioned at least annually and in the order set forth in the statute. *Id.* § 34(a); *see id.* § 34(b) (exceptions) (section does not prevent association engaged in rendering services from disposing of net savings in manner calculated to lower service fees or further common benefit to members), *id.* § 34(c) (section does not prevent association from adopting system in which savings are deferred for fixed period). The net savings, remaining after payment of investment dividends and allocation to an educational fund or retained earnings funds, if any, must "be allocated at the

same uniform rate to all patrons of the association in proportion to their individual patronage . . . ." *Id.* § 34(4).

Requiring cooperatives to incorporate under the cooperative act furthers the legislative purpose of the cooperative act to protect cooperative members. *See Brushy Creek M.U.D.*, 917 S.W.2d at 21 (court's ultimate purpose must be to effect legislature's intent). On the other hand, construing the nonprofit act to permit cooperative incorporations would allow such organizations to obtain the benefits of the cooperative association form but evade the constraints placed on cooperative associations to protect the members. In contrast to the cooperative act, the nonprofit act does not require that each member have a vote or that directors be elected from and by the members, nor does it contain any provision regarding and requiring generally annual and uniform distribution of net savings to the members. *Compare* cooperative act, V.T.C.S. art. 1396-50, §§ 16 (a), (b), 21(a), 41, *with* nonprofit act, V.T.C.S. arts. 1396-2.08, 2.13 (voting and membership rights as provided in articles of incorporation or bylaws), 1396-2.14 (board of directors may be elected in whole or part by one or more associations or corporation), -2.15 (directors elected, appointed, or designated in manner provided in articles of incorporation or bylaws). For example, in the case of the entity at issue, Poka's articles of incorporation provide for operation on a "cooperative basis," but they also state that members will have no voting rights, *see* ARTS. OF INC. OF POKA LAMBRO COMMUNICATIONS COOP., INC., *supra*, art. VII; that its board of directors shall be elected and removed by a third-party corporate entity, the Poka Lambro Telephone Cooperative, Inc., *id.* art. VI; and that the net savings will be allocated to members in proportion to their patronage, or retained by the enterprise for actual or potential expansion, reduction of charges *"or for other purposes consistent with the best interest of the Corporation as determined by its Board of Directors,"* *compare id.* art. IX (emphasis added), *with* V.T.C.S. art. 1396-50.01, § 34(a) (annual and uniform distributions), (b) (section does not prevent *services* cooperative from disposing of net savings to lower service fees or further *common benefit to members*).

Our conclusion that cooperatives must incorporate under the cooperative act is also supported by the long-standing interpretation of the administrative agency charged with administration of the nonprofit act and the cooperative act. *See Brushy Creek M.U.D.*, 917 S.W.2d at 21 (construction of statute by agency charged with its execution entitled to serious consideration unless clearly inconsistent with legislative intent). The secretary of state's request letter states that since the adoption of the cooperative act in 1975, that office has required corporations which intend to be cooperatives, but for which there is no specific statute, to incorporate under the cooperative act rather than the nonprofit act.[15] Thus, the administrative agency the legislature entrusted with the responsibility of overseeing the incorporation of nonprofit corporations and cooperatives[16] has

---

[15]*See infra* note 16.

[16]Articles of incorporation for a nonprofit corporation must be filed with the secretary of state; if the articles conform to law, the secretary must file them and issue a certificate of incorporation. V.T.C.S. art. 1396-3.03(A). Furthermore, the secretary has "the power and authority reasonably necessary to enable him to administer [the nonprofit act] efficiently and to perform the duties therein imposed." *Id.* art. 1396-9.04(A). The secretary of state has similar
(continued...)

interpreted the cooperative act to govern the incorporation of cooperatives for more than twenty years. Based on our discussion above, such interpretation is consistent with and furthers the legislative intent of the cooperative act.[17]

---

[16](...continued)
authority with respect to the cooperative act. *See id.* art. 1396-50.01 §§ 9 (articles of incorporation filed with secretary of state; if secretary of state finds they conform to law, he shall file them and issue certificate of incorporation), 3 (cooperative association subject to provisions of nonprofit act to extent not in conflict).

[17]A letter brief submitted on behalf of Poka asserts that legislation adopted during the 1997 legislative session constitutes "express acknowledgment by the legislature of its intent to allow a cooperative to be formed pursuant to the Non-profit Act." (Emphasis in original). We disagree. House Bill 3203, among other amendments, adds a new section, to be codified at Property Code section 74.3013, which authorizes a nonprofit cooperative corporation to deliver reported unclaimed funds to a scholarship fund for rural students or to an economic development fund. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 904, § 1, 1997 Tex. Gen. Laws 2847, 2847. Subsection (h) of this provision states that:

> In this section, a nonprofit cooperative corporation means a cooperative corporation organized under Chapters 51 and 52, Agriculture Code, the Texas Non-Profit Corporation Act *(Article 1396-1.01 et seq., Vernon's Texas Civil Statutes), the Cooperative Association* Act (Article 1396-50.01, Vernon's Texas Civil Statutes), and the Electric Cooperative Corporation Act (Article 1528b, Vernon's Texas Civil Statutes).

At most, this provision recognizes that some cooperatives have been organized under the nonprofit act prior to the adoption of the cooperative act. *Cf.* Attorney General Opinion WW-849 (1960).

## S U M M A R Y

A corporation that calls itself a cooperative and purports to operate as a cooperative must incorporate under the Cooperative Association Act, V.T.C.S. art. 1396-50.01, and may not incorporate under the Texas Non-Profit Act, V.T.C.S. arts. 1396-1.10 - 11.01.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General