DES MOINES COUNTY FARM SERVICE COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 8–2355–C–2.

United States District Court,
S. D. Iowa, C. D.

Jan. 22, 1971.

Elmer M. Jones and Robert J. Crane, Burlington, Iowa, and John W. Carty, Winfield, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., Claude H. Freeman, Asst. U. S. Atty., Donald R. Anderson, and Lawrence J. Ross, Attys., Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

Section 1382(b) (1) of the Internal Revenue Code of 1954 is part of Subchapter T relating to the taxation of cooperatives and their patrons.[1] It provides that the taxable income of all cooperatives (with exceptions not applicable here) shall not include amounts paid or allocated as patronage dividends. This action for refund of corporate income taxes presents the narrow and perhaps first impression issue whether the total amount paid or allocated to member patrons is excludible from taxable income as patronage dividends.[2]

The facts are established in their entirety by stipulation and the exhibits which accompany it. The sole issue to be resolved is one of law.

The taxpayer is the Des Moines County Farm Service Company, a marketing and purchasing farmers' cooperative organization, dealing in grain and farm supplies. It is incorporated under Iowa law and has its principal place of business in Danville, Iowa. The taxable years involved are the fiscal years 1964 and 1965. The taxpayer filed corporate income tax returns for those years as a nonexempt cooperative under Subchapter T, Part I, Section 1381(a) (2).

In its corporate income tax returns for its fiscal years ending November 30, 1964 and 1965, the taxpayer reported taxable income totaling $142,744.63. In arriving at this figure, the taxpayer excluded $218,411.33 as margin either paid or allocated to its stockholder-patrons. The Commissioner promptly assessed de-

---

1. Subchapter T was added to the 1954 Internal Revenue Code by the Revenue Act of 1962. See 26 U.S.C.A. §§ 1381–1388 (Supp.1962).

2. Patronage dividends are herein treated as items which are "excluded" rather than "deducted" from the taxpayer's gross income. See Mississippi Valley Portland Cement Co. v. United States, 408 F.2d 827, 831 (5 Cir. 1969).

ficiencies totaling $6208.67 on the basis of his determination that taxable income of $156,157.68 should have been reported for these years, and that the taxpayer could properly exclude only $204,998.38 as margin either paid or allocated to its stockholder-patrons. The parties differ on the method to be employed in making the patronage dividend exclusion computation. Specifically, the parties are at odds as to the treatment to be accorded amounts paid to stockholders as capital stock dividends. The Commissioner contends that such amounts are to be paid ratably out of total net earnings from member and nonmember business because the appropriate treasury regulations so require. The taxpayer argues that capital stock dividends are to be paid first out of net earnings attributable to nonmember business because its by-laws so require.[3] As can be seen, the Commissioner's method has the effect of reducing the member net earnings available for distribution as patronage dividends, thereby increasing the amount of taxable income.

The taxpayer has paid the deficiencies and the interest thereon. Its timely filed claims for refund were summarily denied. This action was subsequently filed under the provisions of 28 U.S.C.A. § 1346.

The center of controversy is the regulatory language which implements Section 1388 of the 1954 Code.[4] In substance, this language—found in the Code of Federal Regulations, 26 C.F.R. § 1.-1388-1(a) (1)—provides that for the purpose of the patronage dividend exclusion computation, the net earnings deemed available for payment of patron-age dividends shall be reduced by the amount of dividends paid on capital stock and other proprietary interests. The principal position taken by the Government is that § 1.1388-1(a) (1) is unequivocal in its language and that it requires payment of capital stock dividends ratably out of total net earnings. And, the Government points to the well-established rule of law that the regulation—standing as a "contemporaneous construction by those charged with administration of the Code"—cannot be set aside unless unreasonable or plainly inconsistent with the statute. The cornerstone of the taxpayer's argument is that the regulatory language in question represents a bold attempt on the part of the Commissioner to avoid the dictates of judicial decision. The taxpayer stresses the holding in Mississippi Chemical Corp. v. United States, 197 F.Supp. 490 (S.D.Miss.1961), aff'd United States v. Mississippi Chemical Company, 326 F.2d 569 (5th Cir. 1964). This case upheld a corporate charter provision which required the payment of capital stock dividends out of earnings attributable to nonmember business. In holding that the cooperative before it did not have to reduce member net earnings by amounts paid out as capital stock dividends, the court reasoned that true patronage dividends represent monies which never become income to the cooperative. The taxpayer would have this Court infer that in the mind of Congress, as it formulated Subchapter T, there was tacit approval of the rule announced in *Mississippi Chemical.*

■■ After careful consideration of the pleadings and briefs and of the

---

3. Section 3 of Article IX of taxpayer's by laws (as amended February 7, 1962) provides:
   " * * * payment of dividends on stock * * * shall first be made out of the savings attributable to non-member business * * *."

4. Section 1388(a) defines a patronage dividend in substance as an amount paid to a patron on the basis of quantity or value of business done with or for the co-operative, which is determined by refer-ence to the net earnings attributable to business done with or for the patrons. To be an excludible patronage dividend, such amounts must be paid under an obligation which antedates the cooperative's receipt of the earnings being distributed. Finally, this section provides that the dividend cannot be attributable to profits from business done with other patrons to whom equal patronage dividends are not distributed, nor can it be from non-patronage income.

dearth of pertinent legislative history as affected and promoted by contemporaneously decided cases and administrative interpretations, the Court reaches the conclusion that § 1.1388–1(a) (1) must be sustained as a valid and reasonable construction of the statute which it was designed to implement. Thus, to the extent that payment of capital stock dividends is not charged ratably against all net earnings, the total amount paid or allocated member-patrons as patronage dividends by a nonexempt cooperative is not excludible from its taxable income. The Court so holds and does so with the following observations:

(1) Provisions authorizing nonexempt cooperatives to exclude amounts paid as patronage dividends from taxable income did not appear in the federal tax structure until enactment of the Revenue Act of 1951. See Ch. 521, § 314(a) (2), 65 Stat. 492, adding § 101(12) (A) (b) to the Internal Revenue Code of 1939. This Act provided that exempt and nonexempt cooperatives must be accorded equal tax treatment with respect to the exclusion of patronage dividends. Since exempt cooperatives had long been permitted by relevant statutory provisions to utilize such an exclusion, the inference is that Congress intended to extend similar benefits to nonexempt cooperatives.

■ (2) Aside from the Act of 1951, the prior statutory law did not deal with the taxation of nonexempt cooperatives. It has, however, long been the administrative practice of the Commissioner to permit nonexempt cooperatives to exclude from their taxable income amounts paid to member-patrons as true patronage dividends. The requirements imposed by the Commissioner with respect to the use of this exclusion were that the dividends be required to be paid or allocated under a pre-existing obligation of the cooperative and that such sums not include profits generated by transactions with other patrons to whom equal amounts were not paid or allocated. See e. g., Rev.Rul. 57–59, 1957–1 Cum.Bull.

24. The theory behind the exclusion can be explained in at least three ways: (a) the cooperative is merely an agent for the patron, with no income on its own account; (b) the patronage dividend is in essence a rebate which constitutes a price adjustment or discount given the patron; or (c) the patronage dividend is never the cooperative's money because it always belongs to the patron. This administrative practice, and the theories on which it is based, have been recognized and approved by the courts. See Clover Farm Stores Corporation, 17 T.C. 1265 (1952) and Farmers Cooperative Co. v. Birmingham, 86 F.Supp. 201 (N. D.Iowa 1949).

(3) Subchapter T is the first specific statutory authorization for the exclusion of patronage dividends from the taxable income of nonexempt cooperatives. Although Congress did not speak to the question of how this exclusion is to be computed, it chose to treat the patronage dividend concept in essentially the same manner as did prior administrative interpretations and decisional law.

■ (4) The consequences which the taxpayer seeks to attach to the holding in *Mississippi Chemical* represent a sudden and unwarranted volte-face from a consistent administrative and judicial practice followed by the Commissioner and the courts since 1924. Compare Fribourg Navigation Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966). The administrative practice of the Commissioner has always been to require corporations operating as nonexempt farmers' cooperatives to reduce "apparent" net income by the amounts paid as dividends on capital stock when making the patronage dividend exclusion computation. See Valparaiso Grain & Lumber Co. v. Commissioner of Internal Revenue, 44 B.T.A. 125, 127 (1941) and Rev.Rul. 68– 228, 1968–1 Cum.Bull. 385. This administrative precedent has been judicially sanctioned. See *Farmers Cooperative, supra.* Because Congress, in enacting Subchapter T, merely codified the prior

administrative practice of the Commissioner, there is little basis on which to conclude that Congress intended to discard the long established method of computing the exclusion. Thus, under the spirit—if not the letter—of the reenactment doctrine, Congress must be taken to have approved the foregoing administrative and judicial constructions—not embodied in § 1.1388–1(a) (1)—and thereby to have given it the force of law. See United States v. Correll, 389 U.S. 299, 305–306, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); *Fribourg, supra,* and the cases cited therein at 283 of 383 U.S., 86 S.Ct. 862.

 (5) The regulation is reasonable and consistent with the statute on which it is based. This without more is sufficient to validate it. See Bingler v. Johnson, 394 U.S. 741, 749–750, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969).

(6) The argument underlying the Government's contentions in this case has much equitable appeal. The taxpayer derives a large portion of its operating capital through equity financing. It has outstanding two classes of common stock, one class of organization stock and one class of preferred stock. On the basis of this capital structure, the taxpayer transacts business with two separate classes of patrons. Nonmember patrons are customers of the taxpayer who receive none of its ordinary corporate distributions and have no voice in its affairs. Member patrons are stockholders as well as customers. They own more than 80 percent of the taxpayer's capital stock and receive more than 90 percent of its ordinary corporate distributions. Additionally, member patrons receive patronage dividends on the basis of business done by each with or through the taxpayer. The investment capital of the taxpayer is used in the production of all its profits. Since business done with or for member and nonmember patrons is equally profitable, there is no logical basis for the taxpayer's contention that the dividends paid with respect to its investment capital should be charged solely against profits attributable to nonmember business. Such a contention carries the implication that investment capital is employed for the sole purpose of generating profits from nonmember sources; this simply is not so.

It is ordered that judgment in this cause be and is hereby entered in favor of the defendant herein, the United States of America.