**FCX, INC.**

v.

**The UNITED STATES.**

**No. 440–72.**

United States Court of Claims.

March 17, 1976.

Richard A. Mullens, Washington, D. C., for plaintiff. Charles W. Schoeneman, Washington, D. C., atty. of record. Sanford, Cannon, Adams & McCullough, Raleigh, N. C., of counsel.

Charles A. Auslander, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser, Jr. and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, SKELTON and BENNETT, Judges.

## OPINION

SKELTON, Judge:

This is a suit by plaintiff, FCX, Inc., of Raleigh, North Carolina, for refund of income taxes and interest thereon. Plaintiff is a nonexempt farmer's cooperative having retail, wholesale, and manufacturing operations and facilities in North and South Car-olina and franchised dealers in both states. It has the accrual method of accounting with its fiscal year ending June 30.

During the fiscal years of 1967 and 1968, plaintiff paid dividends on its preferred stock of $469,365 and $477,202, respectively, out of earnings from non-member patronage and from non-patronage sources. During the same years plaintiff made patronage refunds to its patron members of $981,-433.02 and $855,165.09, respectively. These refunds were paid from gross income attributable to member patronage. After audit of plaintiff's books by the Internal Revenue Service for these years, a portion of the amounts claimed as patronage refunds was disallowed. The plaintiff filed claims for refund, which were disallowed, and thereafter timely filed this suit to recover $122,-639 and $126,579 for the taxable years 1967 and 1968, respectively.

The question to be decided is, whether, as the Government contends, dividends paid on capital stock of a non-exempt cooperative corporation must be deducted ratably from its earnings from all sources in computing the allowable patronage dividend deduction for federal income tax purposes, or whether for such purpose taxpayer was entitled to allocate capital stock dividends only to earnings from sources other than member patronage?

The facts in the case are stipulated and the issue before us is one of law. The case presents a question of first impression in this court, although other courts have considered and decided it in other cases, as will be shown below.

Plaintiff, as a nonexempt cooperative, is given special federal income tax treatment not afforded ordinary business corporations, in that under Sections 1381 through 1388 of the Internal Revenue Code of 1954 (Subchapter T), which was added to the Code by Section 17(a) of the Revenue Act of 1962, Pub.L. No. 87–834, 76 Stat. 960, it may deduct patronage dividends from gross income in computing its taxable income. Patronage dividends are defined in Section 1388(a) as follows:

§ 1388. Definitions; special rules.

(a) Patronage dividend.—

For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—

(1) on the basis of quantity or value of business done with or for such patron,

(2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and

(3) which is determined by reference to the net earnings of the organization from business done with or for its patrons.

Such term does not include any amount paid to a patron to the extent that (A) such amount is out of earnings other than from business done with or for patrons, or (B) such amount is out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions. [26 U.S.C. § 1388(a) (1970).]

Prior to 1951, no statute recognized or sanctioned a deduction or exclusion of patronage dividends from the gross income of a cooperative. Nevertheless, the allowance of patronage dividends to nonexempt cooperatives had been an approved administrative practice for many years. *Farmers Cooperative Co. v. Birmingham*, 86 F.Supp. 201 (N.D.Iowa 1949); *Puget Sound Plywood, Inc.*, 44 T.C. 305 (1965); *Consumer Credit Rural Electric Cooperative Corp.*, 37 T.C. 136 (1961), *rev'd and remanded*, 319 F.2d 475 (6th Cir. 1963), *on remand*, 23 T.C.M. 149 (1964). *See also* T.D. 2737, 20 Treas.Dec.Int.Rev. 441 (1918) dealing with the exclusion of patronage dividends paid by cooperatives to their patrons. In 1951, the first statutory provision recognizing the prior administrative practice with reference to patronage dividends of cooperatives was contained in the Revenue Act of 1951, ch. 521, § 314(a), 65 Stat. 452. This Act added subparagraph (B) to Section 101(12) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed.).

The first statute that permitted a nonexempt cooperative to deduct patronage dividends was the Revenue Act of 1962, Pub.L. No. 87–834, 76 Stat. 960. Section 17(a) of this Act added subchapter T to the Code of 1954, containing Sections 1381 through 1388, which controls the taxable years involved in this case. Section 1382(b) allows a nonexempt cooperative to reduce its taxable income by the payment of a qualifying patronage dividend, which is defined in Section 1388(a), quoted above.

A reading of Section 1388(a) shows that it defines patronage dividends as amounts paid to a patron of a cooperative (1) on the basis of quantity or value of business done with or for such patron, (2) where the cooperative is under a pre-existing obligation to pay such amount, and (3) the payment is determined by reference to the net earnings of the cooperative from business done with or for its patrons. The definition expressly excludes amounts paid from earnings other than from business done with or for patrons. Such exclusion was clearly intended by Congress as shown by H.R.Rep. No. 1447, 87th Cong., 2d Sess., A133 (1962–3 Cum.Bull. 405, 631) and S.Rep. No. 1881, 87th Cong., 2d Sess., 316–17 (1962–3 Cum. Bull. 707, 1020–21), U.S.Code Cong. & Admin.News 1962, pp. 3304, 3620, wherein it is stated:

It is made clear that there are not to be included as patronage dividends any amounts which are out of earnings other than from business done with or for patrons, or any amounts paid to patrons which are attributable to the patronage of other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions. *Thus, if a cooperative does not pay any patronage dividends to nonmembers, any portion of the amounts paid to members which is out of net earnings from patronage with nonmembers, and which would have been paid to the nonmembers if all patrons were treat-*

*ed alike, is not a patronage dividend.* [Emphasis supplied.]

In this case, the plaintiff deducted dividends on its preferred stock solely from the earnings from business done with nonmember patrons and from earnings from other nonpatronage sources in computing its patronage refund. Plaintiff contends that Article VI, Section 4 of its By-Laws authorized it to follow this procedure in the following language:

Net earnings attributable to non-member patronage and to sources other than patronage * * * shall be applied firstly to payment of dividends on capital stock, * * *.

The Government contends that in computing its patronage dividend deduction, plaintiff must ratably reduce its earnings from *all* sources by the amount of dividends paid on its preferred stock, and that the provisions of its By-Laws are not controlling as to what constitutes a true patronage dividend under federal tax law. Magill and Merrill, *The Taxable Income of Cooperatives*, 49 Mich.L.Rev. 167 (1950).

It appears that the formula for computing the patronage dividend deduction under the facts of this case is indicated in long-standing administrative rulings as far back as 1924 (S.M.1551), restated in A.R.R. 6967, III-I Cum.Bull. 287, 289 (1924) as follows:

First compute the apparent net income of the cooperative association. From this amount deduct the fixed dividend paid or payable on any outstanding capital stock. The amount of such fixed dividend is the portion of net income properly attributable to the investment made in the association by the holders of any outstanding capital stock.

The balance consists of (1) the amount available for refund to the members of the association and (2) the profits made from nonmembers. In the absence of evidence to the contrary, it will be assumed that the dealings with members and nonmembers are equally profitable, and, accordingly, that the amount available for refund consists of that proportion of the apparent net profits, after deduct-

ing the fixed dividend on outstanding capital stock, which the amount of business transacted with members bears to the entire amount of business transacted. Up to the amount available for refund thus computed, a distribution by a cooperative association to its members, upon the basis of the business transacted with them, will be deemed to be a true patronage dividend, deductible by the association in computing its taxable net income for Federal income and profits tax purposes. .

Prior to the enactment of subchapter T, A.R.R. 6967 was approved in *Valparaiso Grain & Lumber Co.*, 44 B.T.A. 125 (1941); *Farmers Union Cooperative Exchange*, 42 B.T.A. 1200 (1940); and *Trego County Cooperative Ass'n*, 6 B.T.A. 1275 (1927). The formula set forth in A.R.R. 6967 quoted above has been republished in Rev.Rul. 68–228, 1968–1 Cum.Bull. 385. The plaintiff argues that Rev.Rul. 68–228, as well as Section 1.1388–1(a)(1) of Treasury Regulations on Income Tax promulgated under subchapter T are invalid. Section 1.1388–1(a) of the Regulations provides as follows:

§ 1.1388–1 *Definitions and special rules.*

(a) *Patronage dividend—*(1) *In general.* The term "patronage dividend" means an amount paid to a patron by a cooperative organization subject to the provisions of part I, subchapter T, chapter 1 of the Code, which is paid—

(i) On the basis of quantity or value of business done with or for such patron.

(ii) Under a valid enforceable written obligation of such organization to the patron to pay such amount, which obligation existed before the cooperative organization received the amount so paid, and

(iii) Which is determined by reference to the net earnings of the cooperative organization from business done with or for its patrons.

For the purpose of subdivision (ii) of this subparagraph, amounts paid by a cooperative organization are paid under a valid enforceable written obligation

if such payments are required by State law or are paid pursuant to provisions of the bylaws, articles of incorporation, or other written contract, whereby the organization is obligated to make such payment. The term "net earnings," for purposes of subdivision (iii) of this subparagraph, includes the excess of amounts retained (or assessed) by the organization to cover expenses or other items over the amount of such expenses or other items. For purposes of such subdivision (iii), net earnings shall not be reduced by any taxes imposed by subtitle A of the Code, but shall be reduced by dividends paid on capital stock or other proprietary capital interests.

(2) *Exceptions.* The term "patronage dividends" does not include the following:

(i) An amount paid to a patron by a cooperative organization to the extent that such amount is paid out of earnings not derived from business done with or for patrons.

(ii) An amount paid to a patron by a cooperative organization to the extent that such amount is paid out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions. Thus, if a cooperative organization does not pay any patronage dividends to nonmembers, any portion of the amounts paid to members which is out of net earnings from patronage with nonmembers, and which would have been paid to the nonmembers if all patrons were treated alike, is not a patronage dividend.

(iii) An amount paid to a patron by a cooperative organization to the extent that such amount is paid in redemption of capital stock, or in redemption or satisfaction of certificates of indebtedness, revolving fund certificates, retain certificates, letters of advice, or other similar documents, even if such documents were originally paid as patronage dividends.

(iv) An amount paid to a patron by a cooperative organization to the extent that such amount is fixed without reference to the net earnings of the cooperative organization from business done with or for its patrons.

\* \* \* \* \* \*

It is clear that A.R.R. 6967, and Rev.Rul. 68–228 and Section 1.1388–1(a)(1) require that a taxpayer, such as plaintiff here, in determining the amount of patronage dividend, must reduce the net earnings by dividends paid on capital stock, and that only net earnings so reduced are to be apportioned between the various relevant sources. We conclude that the revenue rulings and the regulations promulgated under subchapter T are consistent with the statute and are reasonable and valid.

The identical problem involved in this case was decided in favor of the Government by the Tax Court and the Eighth and Tenth Circuit Courts of Appeal in two cases that are, for all practical purposes, on "all fours" with the instant case, namely, *Des Moines County Farm Service Co. v. United States,* 448 F.2d 776 (8th Cir. 1971), *affirming,* 324 F.Supp. 1216 (S.D.Iowa); and *Union Equity Cooperative Exchange v. Commissioner,* 481 F.2d 812 (10th Cir. 1973), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321. We agree with the reasoning and decisions of the courts in those cases. In both cases the by-laws of the taxpayers provided that dividends on capital stock should first be paid out of earnings from sources other than member patronage, as in the instant case. The pertinent and controlling facts in those cases were, for all practical purposes, identical with the facts in the case before us. The decisions in those cases are strong precedents for our decision here. In the *Des Moines* case, the court, after reviewing the facts, held:

\* \* \* The administrative practice of the Commissioner has always been to require corporations operating as nonexempt farmers' cooperatives to reduce "apparent" net income by the amounts paid as dividends on capital stock when

making the patronage dividend exclusion computation. See *Valparaiso Grain & Lumber Co. v. Commissioner of Internal Revenue,* 44 B.T.A. 125, 127 (1941) and Rev.Rul. 68–228, 1968–1 Cum.Bull. 385. This administrative precedent has been judicially sanctioned. See *Farmers Cooperative, supra.* [86 F.Supp. 201 (N.D. Iowa 1949)]. Because Congress, in enacting Subchapter T, merely codified the prior administrative practice of the Commissioner, there is little basis on which to conclude that Congress intended to discard the long established method of computing the exclusion. Thus, under the spirit—if not the letter—of the reenactment doctrine, Congress must be taken to have approved the foregoing administrative and judicial constructions—not embodied in § 1.1388–1(a)(1)—and thereby to have given it the force of law. See *United States v. Correll,* 389 U.S. 299, 305–306, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); *Fribourg, supra,* [383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966)] and the cases cited therein at 283 of 383 U.S., 86 S.Ct. 862. [15 L.Ed.2d 751.]

(5) The regulation is reasonable and consistent with the statute on which it is based. This without more is sufficient to validate it. See *Bingler v. Johnson,* 394 U.S. 741, 749–750, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). [324 F.Supp. at 1219–20.]

The court further held:

After careful consideration of the pleadings and briefs and of the dearth of pertinent legislative history as affected and promoted by contemporaneously decided cases and administrative interpretations, the Court reaches the conclusion that § 1.1388–1(a)(1) must be sustained as a valid and reasonable construction of the statute which it was designed to implement. Thus, to the extent that payment of capital stock dividends is not charged ratably against all net earnings, the total amount paid or allocated member-patrons as patronage dividends by a nonexempt cooperative is not excludible from its tax-

able income. The Court so holds  *  *. [*Id.* at 1218–1219.]

In the *Union Equity* case, the court, after stating that "the *Des Moines* case is virtually on all fours with the instant case," and after approving the decision of the court in *Des Moines* quoted with approval the following holding of the Tax Court in *Union Equity:*

In attributing the entire dividend paid on capital stock to nonmember business, petitioner is saying, in effect, that its stockholders have invested only in those of petitioner's operations and assets which were used to transact nonmember business.  *  *  *  We are unable to find any indication that the stockholders here invested in anything but the undivided totality of petitioner's operations and assets. By following a computational path that fails to reflect the reality underlying its mode of operation, petitioner has substituted accounting fiction for taxable fact.

"Consequently, in the absence of any evidence to the contrary, we uphold respondent's determination that the dividend paid on petitioner's capital stock was properly attributable to net earnings realized from member business and to net earnings realized from nonmember business in proportion to the business transacted with members and nonmembers respectively. Conversely, the amount of member earnings available for distribution as a true patronage dividend would have to be reduced by that part of the dividend on capital stock which was attributable to member earnings." [481 F.2d at 815.]

Plaintiff relies heavily on *United States v. Mississippi Chemical Co.,* 326 F.2d 569 (5th Cir. 1964). In that case the court upheld a corporate charter provision which required the payment of capital stock dividends out of earnings attributable to nonmember business. The courts in *Des Moines* and *Union Equity* considered the *Mississippi Chemical* case and refused to follow it. The court in *Union Equity* and

the Tax Court in that case distinguished the *Mississippi Chemical* case on the ground:

> * * * [T]here the trial court found as a fact that no part of the sum paid as a patronage dividend was paid, directly or indirectly, from the profits gained from business transacted with nonmembers * * *. [481 F.2d at 815–16.]

On appeal the Fifth Circuit Court of Appeals held that this finding was "particularly correct." In this connection, we find that the appellate court in that case stated:

> * * * The record demonstrates, and the district judge concluded, that the cooperative actually paid the patronage refunds here from earnings on business done with the stockholder patrons. [326 F.2d at 573.]

The court further stated:

The District Court in the instant case was particularly correct in the following finding:

> * * * *That no part of said sum was paid from the profits on non-stockholder business.* * * * [*Id.* at 574.] [Emphasis supplied.]

From these findings in the *Mississippi Chemical* case, we conclude, as did the courts in *Des Moines* and *Union Equity,* that it is clearly distinguishable from those cases and from the case before us. Another distinguishing fact is shown by the decision in *Mississippi Chemical* when the court stated:

> * * * Treasury Regulations and Treasury Decisions, however, are not involved in the issue for decision here. * * * [326 F.2d at 571.]

In contrast, Treasury Regulations and Decisions and the statute of 1962 (subchapter T) are very much involved in the instant case.

We conclude, as did the courts in *Des Moines* and *Union Equity,* that *Mississippi Chemical* is distinguishable from the case at bar and we cannot and do not follow it, because, among other reasons, the amounts which the plaintiff seeks to deduct here from its gross income as patronage dividends were attributable at least in part to earnings from business done with *nonmember* patrons.

■ Plaintiff says that Section 1.1388–1(a) denies it equal protection of the law with respect to other corporations and in that respect, is discriminatory and unconstitutional. We do not agree. Plaintiff is not in the same class as ordinary corporations. As a nonexempt cooperative, the plaintiff receives benefits not given to ordinary corporations. As a cooperative, it enjoys the patronage dividend deduction in addition to deductions allowed to ordinary corporations. There is no discrimination between plaintiff and other cooperatives in the same class. We hold that the regulation does not deny plaintiff equal protection of the law, does not discriminate, is valid, and constitutional.

■ Finally, plaintiff contends that it is entitled to deduct a portion of the cash it paid to its member patrons because under Section 162 of the Code it was a deductible rebate. We do not agree. Plaintiff paid back to its member patrons all of the money it received from them. Any further distribution to members would have to be made out of earnings from sources other than from the members. Such a distribution is not a rebate and cannot be deducted under Section 162 of the Code.

■ We hold that the plaintiff, as a nonexempt cooperative, was required to deduct dividends paid on its capital stock ratably from all of its net earnings in computing the allowable patronage dividend deduction for federal income tax purposes during its fiscal years 1967 and 1968, and that the determination by the Commissioner of Internal Revenue of the income tax owed by the plaintiff during those years was correct.

## CONCLUSION OF LAW

Upon the foregoing opinion, which includes therein the necessary facts that were stipulated by the parties, the court concludes as a matter of law that judgment should be and is hereby entered in favor of the defendant; that plaintiff's claim is denied; and plaintiff's petition is dismissed.